IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **DOUGLAS WILLIAMS,** § | | |
| Plaintiff, § | CA No. _____ | |
| § | | |
| v. § | | |
| § | JURY DEMANDED | |
| **DELTA AIR LINES, INC.,** § | | |
| Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### 1. PRELIMINARY STATEMENT

1.1. Plaintiff demands a jury for any and all issues triable to a jury. This action seeks compensatory, liquidated and actual/economic damages; and costs and attorney's fees for the claims suffered by Plaintiff, DOUGLAS WILLIAMS ("Plaintiff"), due to DELTA AIR LINES, INC. (referred to herein as "Defendant" or "DELTA") taking adverse employment actions against him ultimately resulting in the wrongful termination of his employment as explained herein.

1.2 This action arises under the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act, as amended (ADA), the Family Medical Leave Act (FMLA), and the Georgia Fair Employment Practices Act.

## 2. JURISDICTION

2.1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

2.2. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 12205 and Rule 54, FRCP.

2.3. Compensatory damages may be awarded pursuant to 42 U.S.C. § 198la(a)(1) and 42 U.S.C. § 198la(a)(2)(b)(1).

2.4. Punitive damages may be awarded pursuant to 42 U.S.C. § 1981a(a)(1) and 42 U.S.C. § 1981a(a)(2)(b)(1).

## 3. VENUE

3.1. Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because at all times relevant to this cause of action, Defendant resides in this judicial district, maintaining its principal place of business.

## 4. PARTIES

4.1. Plaintiff is a former employee of Defendant and resides in Fayetteville, Georgia.

4.2. Defendant DELTA AIR LINES, INC. is an employer qualified to do business in Georgia and employs more than 500 regular employees. Defendant DELTA AIR LINES, INC. is a corporation that may be served via its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

## 5. STATEMENT OF FACTS

5.1  Plaintiff worked for Delta in Atlanta, Georgia as an Aircraft Maintenance Mechanic, when he was wrongfully terminated on November 30, 2022.

5.2  Plaintiff was suspended upon his return from medical leave and subsequently terminated less than one month later.

5.3  In July 2020, Plaintiff tore his meniscus while on duty at Delta and subsequently, had knee surgery. While getting his physical exam to return to work in December 2020, he was diagnosed with stage 3 prostate cancer and then kidney cancer. Plaintiff underwent radiation treatment and surgery in or about April 2021 to remove his kidney. Plaintiff was out of work on short-term disability for approximately 5-6 months.

5.4  Delta was aware of Plaintiff's conditions, treatment and disabilities. When Plaintiff tried to come back to work, he was considered "high-risk" because of his medical conditions during the height of the COVID-19 pandemic and was prevented from returning to work due to Delta policy. When the COVID safety parameters were lifted, Plaintiff was able to return.

5.5  In about September 2021, Plaintiff had knee replacement surgery and took medical leave because of that serious medical condition/ disability (and to recover from surgery). Plaintiff returned to work in January 2022. Unfortunately, soon after he returned from medical leave in January 2022, Plaintiff's son passed away (at 33 years old) on January 27, 2022. Plaintiff took bereavement leave and some additional vacation time.

5.6  While working in the shop, Plaintiff had several medical issues over the next several months. He suffered from insomnia and severe sleep apnea, was under doctor's care and was being prescribed medications. Unfortunately, the medications prescribed to Plaintiff

caused him to pass out (and stop breathing at times). However, during these episodes, it would appear to others that Plaintiff was sleeping. Plaintiff informed Rick Dupree, General Manager, and Kathy McCampbell, his lead technician, of his conditions, the complications with the medication, and that he was under doctor's care. Other co-workers knew about his condition.

5.7   The insomnia and severe sleep apnea were disabilities affecting Plaintiff's sleep and cognitive abilities. He informed Delta of this, but he was not given any accommodations. Instead, Plaintiff felt that he was being treated differently and set up to fail.

5.8   Before Plaintiff suffered from serious medical conditions and disabilities, if he missed a part or made a mistake, it would be identified, and he would be given an opportunity to correct it. This was the policy and procedure for the forty-two (42) years Plaintiff worked in the industry. After Plaintiff informed Delta of his disabilities and went out on medical leave, this was not the same process/procedure applied to him. Once Plaintiff's doctors identified the issues and he received a CPAP machine and adjusted his medications, he had no further issues related to passing out at work.

5.9   Unfortunately, Plaintiff was also having issues with his knee in July 2022. His treating doctor took him off work to re-evaluate his condition. Plaintiff received two stents to correct blood flow in his legs.

5.10  Plaintiff kept David Presley and Sedgwick informed of his medical conditions, disabilities, treatments and restrictions. He informed them about his knee surgery, stent procedures, sleep apnea and obstructive sleep apnea (that caused him to stop breathing multiple times), and corresponding treatment progress.

5.11   On August 26, 2022, Plaintiff's treating physician recommended that he be off work for six (6) weeks to adjust his CPAP pressure settings and be monitored. Plaintiff provided this doctor's note to Delta and Sedgwick and went on medical leave.

5.12   Plaintiff was to return to work from medical leave on October 10, 2022, however, when he went to his doctor's appointment on September 23, 2022, his treating physician extended his leave, due to his medical condition at that time and test results. Plaintiff's doctor advised that his medical leave needed to be extended to November 4, 2022.

5.13   As soon as Plaintiff learned that he would need this extension, he contacted Sedgwick and David Presley and provided his doctor's note in which his doctor stated, "It is my medical opinion that Douglas Williams should remain out of work until 6 weeks from today (until November 4, 2022). We are still adjusting his CPAP pressure settings."

5.14   Mr. Presley did not engage with Plaintiff to see if his brief extension could be accommodated and instead Plaintiff received a text message stating, "[I]f not there on Monday will be considered as job abandonment."

5.15   On September 24, 2022, Plaintiff filed a written grievance against David Presley because he threatened to terminate Plaintiff's employment for "job abandonment." However, at that time Plaintiff was on short-term medical leave, under doctor's care and communicating with the company's third-party insurance company, Sedgwick. He had only asked for a reasonable accommodation and Mr. Presley's response failed to engage in any interactive process to see if such accommodation request could be granted.

5.16   Plaintiff complained, engaging in protected activity, because Mr. Presley's actions and response to him while on medical leave were discriminatory, retaliatory and hostile because of Plaintiff's serious medical conditions, need for leave and accommodations and because

of his disabilities.  Plaintiff asked HR to be placed in a different department when he returned from medical leave.  HR stated that Plaintiff must complete his 2-year lock in the Department before he could bid out of the department.  HR also stated that Plaintiff was now on a "not satisfactory worker" and do not hire or promote list.

5.17  Plaintiff returned to work on November 4, 2022, but was immediately suspended without pay that same day.  Plaintiff had a release from the doctor which he provided to Delta.  Plaintiff met with Mr. Dupree and Mr. Presley and was told he was suspended without pay until further evaluation.  Then, Plaintiff was terminated a few weeks later and received a termination letter in the mail.

5.18  Plaintiff was also discriminated against based on his age (61) when Kathy McCampbell, Lead Technician, would chastise him about his age repeatedly.  It got to the point where Plaintiff would yell out "elder abuse" so Ms. McCampbell would leave his bench.  Plaintiff reported this to HR and upper management.  Plaintiff put the company on notice that he felt that he was being pushed out using elder abuse tactics and words to try and shame him in from of his coworkers.

5.19   As a result of Defendant's decision to terminate his employment, Plaintiff has suffered loss of wages and benefits, humiliation, severe emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

## 6.    CONDITIONS PRECEDENT

6.1    All conditions precedent to jurisdiction have occurred or been complied with.

6.2    Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.3   This lawsuit was filed within ninety (90) days of Plaintiff receiving his Notice of Right to Sue from the EEOC.

### 7.   CAUSES OF ACTION

### *Disability/Perceived Disability Discrimination and Failure to Reasonably Accommodate (ADA and Georgia Fair Employment Practices Act)*

7.1   Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.2   Plaintiff was a member of a protected class as a qualified employee with a disability/perceived disability and requested reasonable accommodations.

7.3   Defendant was on notice Plaintiff suffered from a disability.

7.4   Plaintiff suffered from a disability/perceived disability and required medical leave due to medical conditions, treatments and restrictions.

7.5   Plaintiff alleges Defendant violated the ADA and the Georgia Fair Employment Practices Act when Defendant took adverse actions against Plaintiff, including his suspension and termination.

7.6   Plaintiff was replaced by a non-disabled employee and/or treated less favorably than individuals outside of his protected class based on disability.

### *Age Discrimination (ADEA and Georgia Fair Employment Practices Act)*

7.7   Plaintiff incorporates by reference each of the facts and allegations set forth above.

7.8   Defendant is an employer under the ADEA and Georgia Fair Employment Practices Act.

7.9   Plaintiff is a member of a protected class based on his age, as he was 61 years old at the time of his termination.

7.10   Plaintiff was subjected to an adverse action when he was terminated.

7.11   Plaintiff was treated less favorably than individuals outside his protected class based on age and/or Plaintiff was replaced by an individual outside of his protected class based on age.

7.12   Plaintiff suffered damage as a result of age discrimination when he was terminated.

<em><u>Retaliation</u></em><br><em><u>(ADA, ADEA and Georgia Fair Employment Practices Act)</u></em>

7.13   Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.14   Defendant intentionally retaliated against Plaintiff after making requests for accommodation, reporting disability discrimination and reporting age discrimination in violation of the ADA, ADEA and the Georgia Fair Employment Practices Act.

7.15   Defendant intentionally retaliated against Plaintiff in violation of the ADA and the Georgia Fair Employment Practices Act after Plaintiff filed a written grievance against Defendant due to disability discrimination and/or after requesting a reasonable accommodation.

7.16   Plaintiff faced adverse actions when he was suspended and then terminated.

7.17   The adverse actions Plaintiff faced were causally connected to his engagement in protected activity.

<em><u>FMLA Retaliation</u></em>

7.18   Plaintiff incorporates by reference each of the facts and allegations set forth above as if fully set forth herein.

7.19   Plaintiff was qualified for medical leave under the FMLA.

7.20   Plaintiff complied with all reasonable requests from Defendans for information regarding his medical leave/request for medical leave.

7.21   Plaintiff invoked his right to FMLA-qualifying leave.

7.22    Defendant, through its employees, retaliated against Plaintiff for requesting and taking FMLA leave.

7.23    Defendant's actions were knowing and intentional violations of the FMLA or in reckless disregard of the FMLA and Plaintiff's rights.

7.24    Plaintiff suffered adverse actions causally related to his invocation of FMLA rights when his employment was terminated.

7.25    Plaintiff has suffered damages as a result of the violation.

7.26    Defendant is liable for damages recoverable under the FMLA, including back pay, interest on back pay, front pay, lost benefits, liquidated damages, and attorneys' fees, to which he is entitled under the FMLA.

## 8.    PRAYER

8.1    WHEREFORE, Plaintiff prays the Court order to award such relief including the following:

    8.1.1    Award Plaintiff actual damages;

    8.1.2    Order Defendant to pay Plaintiff back pay and front pay and benefits;

    8.1.3    Award Plaintiff compensatory damages for mental anguish;

    8.1.4    Award Plaintiff punitive damages to be determined by the trier of fact;

    8.1.5    Grant Plaintiff pre-judgment and post-judgment interest;

    8.1.6    Order Defendant to pay Plaintiff's costs and attorney's fees in this action; and,

    8.1.7    Order and grant such other relief as is proper and just.

Respectfully Submitted,

***/s/ Jacques P. Leeds***
Jacques P. Leeds
GA State Bar No. 968509
**LEEDS LAW FIRM, PLLC**
3340 Peachtree Rd. NE, Suite 1800
Atlanta, GA 30326
Tel: (877) 492-0152
Fax: (832) 787-1020
jacques@jleedslawfirm.com

Attorney for Plaintiff